**United States District Court**
For the Northern District of California

1

2

3

4

5                           UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7                                 OAKLAND DIVISION

8

9   JOSEPH P. SHELTON,

10                    Petitioner,                    No. C 10-01100 PJH

11      vs.                                          **ORDER DENYING MOTION
                                                     TO DISMISS**
12   JOHN C. MARSHALL, Warden,

13                    Respondent.
                                        /
14

15          Currently before the court is respondent's motion to dismiss.  For the reasons below,

16   the court DENIES the motion and sets a briefing schedule on the petition.

17                                    **BACKGROUND**

18          In 1981, a Mendocino County jury convicted petitioner Joseph Shelton ("Shelton") of

19   one count of first degree murder and one count of second degree murder under California

20   Penal Code § 187, two counts of kidnapping under California Penal Code § 211, two counts

21   of robbery under California Penal Code § 211, one count of possession of a machine gun

22   under California Penal Code § 12022, and one count of possession of a silencer under

23   California Penal Code.[1]  The jury also found true special circumstances that fixed the

24   penalty for the first degree murder at life without the possibility of parole.  The judge

25   sentenced Shelton to prison for forty years to life.  The California Court of Appeal affirmed

26   the conviction but modified Shelton's sentence to include the possibility of parole.  The

27

28   _____

           [1]This followed a change of venue from the Lassen County Superior Court.

**United States District Court**

For the Northern District of California

1   California Supreme Court denied review.

2          On November 8, 1991, Shelton filed pro se his first habeas case in this court, which

3   was assigned to the Honorable Fern Smith.  *See* Case No. C 91-3948 FMS.  In that case,

4   Shelton raised two claims: (1) that statements that he made to law enforcement officers in

5   February 1981 should have been suppressed due to the delay in arraigning him; and (2)

6   the trial court erred in failing to instruct the jury on diminished capacity where kidnapping

7   was the felony on which the felony-murder instruction was based.

8          On November 12, 1992, Judge Smith denied the first claim, but noted that Shelton

9   had procedurally defaulted the second claim.  Judge Smith afforded Shelton thirty days to

10  demonstrate cause and prejudice for the default, and advised him that if he failed to do so,

11  the claim would be dismissed.  Instead of doing so, Shelton filed a notice of appeal and a

12  request for a certificate of probable cause.  On December 2, 1992, Judge Smith

13  subsequently denied the request for a certificate of probable cause, noting that an appeal

14  was not timely until his December 12, 1992 deadline for showing cause and prejudice for

15  the procedural default had expired.[2]  Shelton again failed to do so, and on December 16,

16  1992, Judge Smith dismissed the second claim, denied the first claim, and issued a

17  judgment in the case.  On February 25, 1994, the Ninth Circuit dismissed the appeal.[3]

18         Subsequently, in 2002, the Ninth Circuit issued its first decision in Shelton's

19  codefendant Benjamin Wai Silva's appeal of the district court's denial of his habeas

20  petition.  The Ninth Circuit affirmed in part, reversed in part and remanded Silva's case to

21  the district court for a determination as to whether the state had suppressed *Brady*

22  evidence favorable to him and whether the evidence was material.  *Silva v. Woodford*, 279

23  F.3d 825, 855 (9th Cir. 2002); *see Brady v. Maryland*, 373 U.S. 83 (1963).  On remand, the

24  district court determined that the withheld evidence was cumulative and not material, and

25  thus no *Brady* violation had occurred.

26

27         [2]In a December 15, 1993 order, the Ninth Circuit agreed with Judge Smith that the appeal was untimely.

28         [3]The reasons for the Ninth Circuit's dismissal are not clear from the record.

**United States District Court**
For the Northern District of California

1    Silva appealed the district court's decision on remand, and in 2005, the Ninth Circuit

2    reversed the district court's denial of Silva's habeas petition, concluding that a *Brady*

3    violation had occurred.  The court remanded the case to the district court with instructions

4    to grant the writ as to Silva's murder conviction, but left Silva's other convictions for

5    kidnapping, robbery, and a firearms violation intact.  *Silva v. Brown*, 416 F.3d 980, 991 (9th

6    Cir. 2005).

7    On June 25, 2007, Shelton filed another habeas petition in the Eastern District of

8    California.  That petition raised a *Brady* claim in reliance on the Ninth Circuit's decision in

9    *Silva.*  On September 23, 2008, the court dismissed the petition based on Shelton's failure

10   to obtain permission from the Ninth Circuit to file his second and successive petition.

11   Meanwhile, Shelton obtained permission from the Ninth Circuit to file a second or

12   successive habeas petition.  In support of that application, Shelton contended that there

13   was cause based on new evidence in the case, namely evidence that he had failed to

14   discover until the Ninth Circuit issued its 2005 decision in *Silva*.  416 F.3d at 980.  Relying

15   on *Silva*, Shelton asserted that he had learned that the prosecution in his case made a deal

16   with defense witness, Norman Thomas, a co-participant in the crimes, which required that

17   Thomas, who had several years prior to Silva's and Shelton's trial (and after the crimes)

18   been involved in a motorcycle accident and suffered severe brain damage, not undergo a

19   psychiatric evaluation before testifying at Silva's and Shelton's trial.  *See id.* at 984.  On

20   November 4, 2008, in a summary order, the Ninth Circuit granted Shelton's request to file a

21   second or successive petition in district court.

22   On December 17, 2008, Shelton filed pro se the instant federal habeas petition in

23   the United States District Court for the Eastern District of California, which transferred it to

24   this court on March 18, 2010.  At the time the case was transferred to this court, a motion

25   to appoint counsel was pending.  Following transfer, on October 22, 2010, the court

26   granted Shelton's motion to appoint counsel, noting that based on the Ninth Circuit's

27   decision in *Silva*, it appeared that Shelton's claims may have merit, and that establishing a

28   factual basis for them may be difficult for an incarcerated layperson.  The court declined to

1  set further filing deadlines until appointed counsel had entered an appearance.

2      On November 18, 2010, William L. Osterhoudt was appointed as counsel for

3  Shelton.  Instead of answering the petition, on August 1, 2011, the state moved to dismiss

4  Shelton's current petition.  On September 28, 2011, Shelton opposed the motion, and the

5  state chose not to file a reply.

6                                    **DISCUSSION**

7      In its motion to dismiss, the state argues that the court should dismiss the petition

8  because (1) it is a second and successive petition for which Shelton is unable to

9  demonstrate the requisite prima facie case under 28 U.S.C. § 2244(b); and (2) because the

10  petition is untimely.

11  **I.      Merits**

12      **A.      Legal Standards**

13      Section 2244, which governs second and/or successive habeas petitions, provides in

14  pertinent part:

15  (b)      (1) A claim presented in a second or successive habeas corpus
              application under section 2254 that was presented in a prior application
16            shall be dismissed.

17            (2) A claim presented in a second or successive habeas corpus
              application under section 2254 that was not presented in a prior application
18            shall be dismissed unless--

19                  (A)      the applicant shows that the claim relies on a new rule of
                            constitutional law, made retroactive to cases on collateral
20                          review by the Supreme Court, that was previously
                            unavailable; or
21

22                  (B)      (i) the factual predicate for the claim could not have been
                            discovered previously through the exercise of due
                            diligence; and
23

24                          (ii) the facts underlying the claim, if proven and viewed in
                            light of the evidence as a whole, would be sufficient to
                            establish by clear and convincing evidence that, but for
25                          constitutional error, no reasonable factfinder would have
                            found the applicant guilty of the underlying offense.
26

27      In order to bring a second or successive petition under § 2244(b)(2)(B), a petitioner

28                                          4

1   is required to show that "his claim (1) is based on newly discovered evidence and (2)

2   establishes that he is actually innocent of the crimes alleged." *Bible v. Schriro*, 651 F.3d

3   1060, 1064 (2011) (citing *King v. Trujillo*, 638 F.3d 726, 729-30 (9th Cir. 2011)). Section

4   2244(b) forecloses all successive-petition review of constitutional claims unrelated to guilt

5   or innocence. *See Villafuerte v. Stewart*, 142 F.3d 1124, 1126 (9th Cir. 1998) (petitioner's

6   new claims of judicial bias and newly discovered evidence did not present prima facie

7   showing of actual innocence and could not be brought in second petition); *Greenawalt v.*

8   *Stewart*, 105 F.3d 1287, 1288 (9th Cir. 1997) (petitioner's new claim that lethal injection

9   violates his federal constitutional rights could not be brought in successive petition because

10   claim was not related to question of whether he was guilty of first degree murder).

11       Before a second or successive petition may be filed in the district court, the

12   petitioner must first obtain an order from the court of appeals authorizing the district court to

13   consider the petition. *See* 28 U.S.C. § 2244(b)(3)(A).  The court of appeals may issue the

14   order upon a prima facie showing that the petition satisfies the statute.  A prima facie

15   showing is "a sufficient showing of possible merit to warrant a fuller exploration by the

16   district court." *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997); *see, e.g.,*

17   *Siripongs v. Calderon*, 167 F.3d 1225, 1227-28 (9th Cir. 1999) (denying authorization to file

18   second petition where petition advanced no new material facts or colorable claims of

19   constitutional error); *United States v. Lorentsen*, 106 F.3d 278, 279 (9th Cir. 1997) (denying

20   authorization to file second petition where interpretation of new rule was a matter of

21   statutory, not constitutional, law).  If the court of appeals issues an order authorizing the

22   petition to proceed, the district court independently determines whether each newly-

23   presented claim in fact satisfies the statute, which requires more than a prima facie

24   showing. *See United States v. Villa-Gonzalez*, 208 F.3d 1160, 1164-65 (9th Cir. 2000)

25   (§ 2255 case).

26

27

28                                                                 5

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**B.      Analysis**

2            In conjunction with this issue, the state argues essentially that the court should

3    evaluate the merits of Shelton's petition at this stage in the context of a motion to dismiss.

4    In support, it contends that he has not demonstrated the requisite showing required under §

5    2244(b)(2)(B), and that the petition should be dismissed for this reason.  In opposition,

6    Shelton argues that the petition is not really a second or successive petition because it is

7    based on a *Brady* claim.  Alternatively, he argues that it should not be dismissed under §

8    2244(b) at this stage.  The state did not reply to Shelton's arguments.

9            The court agrees with Shelton that given the fact that his petition is based on a

10   *Brady* claim, and indeed one for which the Ninth Circuit already found a violation in his

11   codefendant Silva's case, the restrictions associated with second or successive petitions

12   likely do not apply.  There is some uncertainty regarding how the second or successive

13   restrictions apply with respect to *Brady* claims.  Several circuits have ruled that

14   second-in-time claims arising under *Brady* are not exempt from the second or successive

15   restrictions.  *See Quezada v. Smith*, 624 F.3d 514, 520 (2d Cir. 2010) (applying § 2244(b)

16   to *Brady* claim); *In re Siggers*, 615 F.3d 477, 479 (6th Cir. 2010) (same); *Tompkins v.*

17   *Secretary, Dept. of Corrections*, 557 F.3d 1257, 1259–60 (11th Cir. 2009); *Evans v. Smith*,

18   220 F.3d 306, 323 (4th Cir. 2000) (same); *see also Johnson v. Dretke*, 442 F.3d 901, 911

19   (5th Cir. 2006) ("a successive petitioner urging a *Brady* claim may not rely solely upon the

20   ultimate merits of the *Brady* claim in order to demonstrate due diligence under §

21   2244(b)(2)(B) where the petitioner was noticed pretrial of the existence of the factual

22   predicate and of the factual predicate's ultimate potential exculpatory relevance").

23           The Ninth Circuit, on the other hand, has "recognized that a *Brady v. Maryland*

24   violation claim in a habeas petition may not be subject to the 'clear and convincing

25   standard' [under § 2244(b)(2)(B)], provided the newly discovered evidence supporting the

26   claim [i]s 'material' under Brady."  *King v. Trujillo*, 638 F.3d 726 (9th Cir. 2011) (citing

27

28                                                                    6

**United States District Court**

For the Northern District of California

1  *United States v. Lopez*, 577 F.3d 1053, 1066–68 (9th Cir. 2009) (leaving open the question

2  of whether "meritorious Brady claims that would have been reviewable under the

3  pre-AEDPA prejudice standard" are subject to § 2244(b)(2)(B)(ii))).

4         In *United States v. Lopez*, the federal prisoner argued that the Supreme Court's

5  decision in *Panetti v. Quarterman*, 551 U.S. 930 (2007), holding that

6  competency-to-be-executed claims based on *Ford v. Wainwright*, 477 U.S. 399 (1986), are

7  exempt from AEDPA's second or successive requirements, established that *Brady* claims

8  are exempt from the second-or-successive restrictions as well.  *Lopez*, 577 F.3d at 1066.

9  The government, on the other hand, argued that all second-in-time *Brady* claims are

10  subject to the second or successive restrictions because they are second or successive

11  claims that rely on "newly discovered" evidence.  *Id.*

12         The Ninth Circuit observed that the Supreme Court has not always read "second or

13  successive" literally.  *Id.* at 1062.  It also noted that in *Panetti*, the Supreme Court held

14  "[t]he phrase 'second or successive' is not self-defining."  *Id.* (citing 551 U.S. at 943-944).

15  Responding to the government's argument, the *Lopez* court stated that under a literal

16  reading of "second or successive" in AEDPA,

17         federal courts would lack jurisdiction to consider any second-in-time Brady claims
       unless petitioner demonstrates by clear and convincing evidence that no reasonable
18         factfinder would have found petitioner guilty of the offense had the newly discovered
       evidence been available at trial.  If § [2244(b)][4] applies literally to every
19         second-in-time *Brady* claim, federal courts would be unable to resolve an entire
       subset of meritorious *Brady* claims: those where petitioner can show the suppressed
20         evidence establishes a reasonable probability of a different result and is therefore
       material under *Brady*, but cannot, under [§ 2244(b)(2)]'s more demanding prejudice
21         standard, show that the evidence establishes by clear and convincing evidence that
       no reasonable juror would have voted to convict petitioner.

22

23  *Id.* at 1064.  The effect, the Ninth Circuit concluded, was the "perverse result" of foreclosing

24  federal review of some meritorious claims and rewarding prosecutors for failing to meet

25  ─────────────────

26      [4]*Lopez* was a § 2255 case, and the court was applying § 2255(h)'s gateway in that
   case. The Ninth Circuit, however, treats the § 2244 (b) gateway identically.  *See United States*
27  *v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000).

28                                                    7

United States District Court

For the Northern District of California

1   their constitutional disclosure obligations under Brady.  *Id.* at 1065.

2          Ultimately, the *Lopez* court declined to resolve the issue regarding whether

3   meritorious *Brady* claims were categorically exempt from AEDPA's second or successive

4   petition provisions, holding that "[e]ven if *Panetti* could be viewed as supporting an

5   exemption from AEDPA's gatekeeping provisions for meritorious Brady claims, such a rule

6   would not benefit Lopez, because we conclude (1) that *Brady* claims that fail to establish

7   materiality (and therefore lack merit) are subject to AEDPA's gatekeeping provisions and

8   (2) that Lopez has failed to establish materiality."  *Id.*  However, as noted above, recently

9   and subsequent to *Lopez*, the Ninth Circuit again suggested that the § 2244(b)(2) second

10  and successive restrictions do not necessarily apply to meritorious *Brady* claims.  *King*, 638

11  F.3d at 729.

12         The court finds that to the extent an exception to § 2244(b)(2) exists for *Brady*

13  claims, as suggested by the Ninth Circuit, this is the case that would fit that exception.  *See*

14  *id.*  There is no question here that the Ninth Circuit itself concluded that the withheld

15  evidence challenged by Shelton in his instant petition was both exculpatory and material for

16  *Brady* purposes as concerned Shelton's codefendant.  *Silva*, 416 F.3d at 980.  This alone

17  gives rise to a presumption that this case fits any such exception as recognized by the

18  Ninth Circuit in *King*.  638 F.3d at 729.

19         Alternatively, even assuming application of § 2244(b) to the petition, the court

20  declines to adjudicate the merits of Shelton's petition as respondent invites in the context of

21  a motion to dismiss absent an opposition, traverse, and the complete record.  *See Villa-*

22  *Gonzalez*, 208 F.3d at 1165 (noting that "summary denial of the [2255] motion [or 2254

23  petition] is proper when the motion and the files and records of the case conclusively show

24  that the prisoner's motion does not meet the second or successive motion requirements").

25  Here, the court cannot at this stage, without the record and the benefit of full briefing,

26  conclude that summary denial or dismissal based on the merits is appropriate, especially

27

28                                                    8

United States District Court

For the Northern District of California

1    given the Ninth Circuit's decision in *Silva.*  416 F.3d at 980.

2         For these reasons, the court DENIES respondent's motion on this basis.

3    **II.    Timeliness**

4         **A.    Legal Standards**

5         AEDPA requires that an application for a writ of habeas corpus be made during the

6    one-year statute of limitations period.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides

7    in pertinent part:

8         (d)(1) A 1-year period of limitation shall apply to an application for a writ of
          habeas corpus by a person in custody pursuant to the judgment of a State
9         court. The limitation period shall run from the latest of--

10             (A) the date on which the judgment became final by the conclusion of
               direct review or the expiration of the time for seeking such review;

11

               (B) the date on which the impediment to filing an application created by
12             State action in violation of the Constitution or laws of the United States
               is removed, if the applicant was prevented from filing by such State
13             action;

14             (C) the date on which the constitutional right asserted was initially
               recognized by the Supreme Court, if the right has been newly
15             recognized by the Supreme Court and made retroactively applicable to
               cases on collateral review; or
16

               (D) the date on which the factual predicate of the claim or claims
17             presented could have been discovered through the exercise of due
               diligence.
18

          **B.    Analysis**
19

20        Respondent also argues that the instant petition is barred as untimely, contending

21   that AEDPA's statute of limitations expired on April 24, 1997.  It further contends that

22   Shelton cannot rely on the fact that he did not learn of the factual predicate for this petition

23   until the Ninth Circuit's decision in *Silva* because that constituted a legal ruling and not a

24   historical fact.  Alternatively, it argues that at a minimum, Shelton could have learned of the

25   predicate facts by 2002, when the Ninth Circuit issued its first order regarding Silva's

26   habeas petition.

27        In opposition, Shelton asserts that the factual predicate for his claim is actually the

28                                                        9

**United States District Court**

For the Northern District of California

1  secret deal struck between the prosecution and its primary witness, Thomas, as opposed to

2  the Ninth Circuit's ruling in *Silva.* In support of his opposition, Shelton submitted a June 21,

3  2007 declaration in which he attests that he was unaware of the factual predicate until he

4  personally discovered the Ninth Circuit's 2005 decision.[5] He notes that, subsequently, he

5  immediately exercised diligence by filing a second habeas petition with the California courts

6  in 2006, which those courts denied.

7  Based on the authority and the limited exhibits before it, the court finds that

8  Shelton's instant petition is timely under § 2244(d)(1)(D) because Shelton did not learn of

9  the factual predicate underlying the instant petition until he discovered the Ninth Circuit's

10  July 26, 2005 decision in *Silva* granting Shelton's codefendant habeas relief, and that he

11  exercised diligence in bringing his state and federal habeas petitions as soon as he learned

12  of that decision. The exact date that Shelton learned of the decision, and thus the

13  underlying factual predicate, is unclear to the court. However, assuming Shelton learned of

14  the Ninth Circuit's 2005 decision within a few months of its issuance, his federal habeas

15  petition would have been due in late summer or early fall 2006. Although Shelton did not

16  file the first federal petition based on the Ninth Circuit's decision in *Silva* until June 2007, he

17  *did*, however, file state habeas petitions with the California courts, beginning on May 4,

18  2006, which those courts did not subsequently deny until June 13, 2007. AEDPA's statute

19  of limitations was therefore tolled during this time while "a properly filed application for State

20  post-conviction or other collateral review with respect to the pertinent judgment or claim

21  was pending." 28 U.S.C. § 2244(d)(2). Therefore, Shelton's instant federal petition is

22  timely.

23  Accordingly, for these reasons, the court DENIES respondent's motion to dismiss on

24  this basis as well.

25

26  [5]Shelton attests that he was never notified of the Ninth Circuit's decisions in *Silva* by any
counsel - for the defense or the prosecution - or by the court, but instead learned of the
27  decision on his own. *See* Oppos. Exh. C.

28  10

**United States District Court**
For the Northern District of California

1

**CONCLUSION**

2    Respondent's motion to dismiss the petition is DENIED.  Respondent shall file with

3  the court and serve on petitioner, within 60 days of the date of this order, an answer

4  conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing

5  cause why a writ of habeas corpus should not be issued.  Respondent shall file with the

6  answer and serve on petitioner a copy of all portions of the administrative record that are

7  relevant to a determination of the issues presented by the petition.

8    If the petitioner wishes to respond to the answer, he shall do so by filing a

9  traverse with the court and serving it on respondent within 30 days of his receipt of the

10  answer.

11  **IT IS SO ORDERED.**

12

13  Dated:   March 15, 2012

14
     _____
15   PHYLLIS J. HAMILTON
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28                                                      11