UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JOSEPH P. SHELTON,

    Petitioner,

vs.

JOHN C. MARSHALL, Warden,

    Respondent.

No. C 10-01100 PJH

**ORDER RE RESPONDENT'S MOTION FOR RECONSIDERATION**

Currently before the court is respondent's motion for reconsideration of the court's March 15, 2012 order denying respondent's motion to dismiss Shelton's habeas petition. For the reasons below, the court DENIES the motion.

**BACKGROUND**

**A.    Factual Background**

In 1981, a Mendocino County jury convicted petitioner Joseph Shelton ("Shelton") of one count of first degree murder and one count of second degree murder under California Penal Code § 187, two counts of kidnapping under California Penal Code § 207, two counts of robbery under California Penal Code § 211, one count of possession of a machine gun under California Penal Code § 12022, and one count of possession of a silencer under California Penal Code § 12520.[1]  The jury also found true special circumstances that fixed the penalty for the first degree murder at life without the possibility of parole.  The judge sentenced Shelton to prison for forty years to life.  The California Court of Appeal affirmed

---

[1]This followed a change of venue from the Lassen County Superior Court.

1  the conviction but modified Shelton's sentence to include the possibility of parole. The
2  California Supreme Court denied review.
3        On November 8, 1991, Shelton filed pro se his first habeas case in this court, which
4  was assigned to the Honorable Fern Smith. *See* Case No. C 91-3948 FMS. In that case,
5  Shelton raised two claims: (1) that statements that he made to law enforcement officers in
6  February 1981 should have been suppressed due to the delay in arraigning him; and (2)
7  the trial court erred in failing to instruct the jury on diminished capacity where kidnapping
8  was the felony on which the felony-murder instruction was based.
9        On November 12, 1992, Judge Smith denied the first claim, but noted that Shelton
10 had procedurally defaulted the second claim. Judge Smith afforded Shelton thirty days to
11 demonstrate cause and prejudice for the default, and advised him that if he failed to do so,
12 the claim would be dismissed. Instead of doing so, Shelton filed a notice of appeal and a
13 request for a certificate of probable cause. On December 2, 1992, Judge Smith
14 subsequently denied the request for a certificate of probable cause, noting that an appeal
15 was not timely until his December 12, 1992 deadline for showing cause and prejudice for
16 the procedural default had expired.[2] Shelton again failed to do so, and on December 16,
17 1992, Judge Smith dismissed the second claim, denied the first claim, and issued a
18 judgment in the case. On February 25, 1994, the Ninth Circuit dismissed the appeal.[3]
19       Subsequently, in 2002, the Ninth Circuit issued its first decision in Shelton's
20 codefendant Benjamin Wai Silva's appeal of the district court's denial of his habeas
21 petition. The Ninth Circuit affirmed in part, reversed in part and remanded Silva's case to
22 the district court for a determination as to whether the state had suppressed *Brady*
23 evidence favorable to him and whether the evidence was material. *Silva v. Woodford*, 279
24 F.3d 825, 855 (9th Cir. 2002); *see Brady v. Maryland*, 373 U.S. 83 (1963). On remand, the
25 district court determined that the withheld evidence was cumulative and not material, and

---

[2] In a December 15, 1993 order, the Ninth Circuit agreed with Judge Smith that the appeal was untimely.

[3] The reasons for the Ninth Circuit's dismissal are not clear from the record.

2

thus no *Brady* violation had occurred.

Silva appealed the district court's decision on remand, and in 2005, the Ninth Circuit reversed the district court's denial of Silva's habeas petition, concluding that a *Brady* violation had occurred. The court remanded the case to the district court with instructions to grant the writ as to Silva's murder conviction, but left Silva's other convictions for kidnapping, robbery, and a firearms violation intact. *Silva v. Brown*, 416 F.3d 980, 991 (9th Cir. 2005).

On June 25, 2007, Shelton filed another habeas petition in the Eastern District of California. That petition raised a *Brady* claim in reliance on the Ninth Circuit's decision in *Silva*. On September 23, 2008, the court dismissed the petition based on Shelton's failure to obtain permission from the Ninth Circuit to file his second and successive petition.

Meanwhile, Shelton obtained permission from the Ninth Circuit to file a second or successive habeas petition. In support of that application, Shelton contended that there was cause based on new evidence in the case, namely evidence that he had failed to discover until the Ninth Circuit issued its 2005 decision in *Silva*. 416 F.3d at 980. Relying on *Silva*, Shelton asserted that he had learned that the prosecution in his case made a deal with defense witness, Norman Thomas, a co-participant in the crimes, which required that Thomas, who had several years prior to Silva's and Shelton's trial (and after the crimes) been involved in a motorcycle accident and suffered severe brain damage, not undergo a psychiatric evaluation before testifying at Silva's and Shelton's trial. *See id.* at 984. On November 4, 2008, in a summary order, the Ninth Circuit granted Shelton's request to file a second or successive petition in district court.

**B.   Procedural History**

On December 17, 2008, Shelton filed pro se the instant federal habeas petition in the United States District Court for the Eastern District of California, which transferred it to this court on March 18, 2010. At the time the case was transferred to this court, a motion to appoint counsel was pending. Following transfer, on October 22, 2010, the court granted Shelton's motion to appoint counsel, noting that based on the Ninth Circuit's

decision in *Silva*, it appeared that Shelton's claims may have merit, and that establishing a factual basis for them may be difficult for an incarcerated layperson. The court declined to set further filing deadlines until appointed counsel had entered an appearance.

On November 18, 2010, William L. Osterhoudt was appointed as counsel for Shelton. Instead of answering the petition, on August 1, 2011, the state moved to dismiss Shelton's current petition. On September 28, 2011, Shelton opposed the motion, and the state chose not to file a reply.

On March 15, 2012, the court denied respondent's motion to dismiss. On April 3, 2012, respondent filed a "motion to alter or amend" the order under Federal Rule of Civil Procedure 59(e). On April 4, 2012, the court granted respondent leave to file the motion, and noted that because there had been no judgment in the case, the motion was actually one for reconsideration of an interlocutory order and required leave of the court pursuant to Civil L.R. 7-9(a). The court set a briefing schedule, and the motion for reconsideration was fully briefed on May 10, 2012.

**DISCUSSION**

**A.   Prior Order**

In its March 15, 2012 order, the court first denied the state's motion to dismiss the petition as a second and successive petition under 28 U.S.C. § 2244(b). In denying the motion on this basis, the court noted that the Ninth Circuit has suggested that the restrictions normally applicable to second and successive petitions do not necessarily apply to *Brady* claims, such as that raised by Shelton here, and concluded that if there was an exception, Shelton's case fit the exception. *See King v. Trujillo*, 638 F.3d 726, 729 (9th Cir. 2011). Alternatively, the court declined to adjudicate the merits of Shelton's petition in the context of a motion to dismiss the petition as second and successive absent full briefing and a complete record.

Additionally, the court denied the state's motion to dismiss the petition as untimely.

It found, based in part on his declaration, that Shelton was unaware of the factual predicate for his *Brady* claim until sometime after he discovered the Ninth Circuit's July 26, 2005 decision in *Silva*, 416 F.3d at 991. The court noted that Shelton then filed subsequent habeas petitions in the state courts in 2006, thus tolling AEDPA's statute of limitations during the time that the petitions were pending there until June 13, 2007. Soon after the state court's denial of habeas relief, on June 25, 2007, Shelton filed a habeas petition in the Eastern District of California. Based on these facts, the court concluded that Shelton's instant petition was timely.

**B.   Current Motion**

    **1.   Whether Respondent is Entitled to Reconsideration**

In its motion for reconsideration, the state challenges only the court's ruling regarding the timeliness of Shelton's petition. It argues that the court failed to apply the proper legal standards. It contends that the court granted relief based on when Shelton attested he actually became aware of the factual predicate for his claim, and that AEDPA's timeliness provisions required the court to consider when Shelton "could have . . . discovered [the factual predicate] through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D). The state additionally argues that the diligence inquiry required by the statute does not concern Shelton's diligence in filing a habeas petition after he discovered the factual predicate for his claim, but instead concerns Shelton's diligence in his discovery of the factual predicate for his claim in the first instance. It contends that AEDPA's statute of limitations commenced running from the time that Shelton could have discovered the factual predicate for the claim through the exercise of due diligence.

Shelton does not dispute the above legal standards set forth by the state. He does, however, argue that the court applied the correct legal standards in its March 15, 2012 order, and that the state's motion for reconsideration is improper and fails to comply with Civil L.R. 7-9. He also contends that the state is improperly using the instant motion for

5

reconsideration as a substitute for the reply that it failed to file in conjunction with its first motion to dismiss.

The Federal Rules of Civil Procedure do not address motions for reconsideration of interlocutory orders. Under the Civil Local Rules of this court, a party may seek reconsideration of "any interlocutory order" made in a case "[b]efore the entry of judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case." Civil L.R. 7-9(a). In seeking reconsideration, the moving party must specifically show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

The court agrees with Shelton that the state has to some degree utilized the motion for reconsideration as a reply to Shelton's opposition to the original motion to dismiss, responding to several of Shelton's arguments in his prior opposition and advancing new arguments in response to that opposition. It would have been helpful had the state filed a reply in conjunction with the prior motion. Nevertheless, the court finds that reconsideration is appropriate because it failed in its March 15, 2012 order to adequately consider when and whether Shelton "could have" discovered the factual predicate for his current *Brady* claim through the exercise of due diligence.

**2.    Merits of Motion for Reconsideration**

    **A.    Parties' Arguments**

As noted above, the factual predicate for Shelton's *Brady* claim was a secret deal

6

struck between the prosecution and its primary witness, Thomas, which the state concealed for years following Shelton's and Silva's separate trials. The state argues that through the exercise of diligence, Shelton could have discovered the factual predicate for the *Brady* claim from Silva's state and federal habeas petitions. It notes that Silva filed a state habeas petition raising the *Brady* claim with the California Supreme Court on April 14, 1989, and a federal habeas petition raising the claim on June 25, 1990.

The state argues that it is reasonable to require Shelton to monitor and attempt to obtain filings in Silva's state and federal habeas cases because Shelton possessed - or should have possessed - a strong interest in Silva's cases since Shelton was convicted based on the same witnesses' testimony, particularly that of Thomas. The state further notes that Shelton was aware that Silva had filed a federal habeas petition because Shelton signed a declaration that was filed in Silva's case in August 1994, and the state presumes that Shelton was contacted by Silva's counsel in conjunction with preparation of the declaration.[4] It argues that Shelton therefore had a reason to believe that Silva's filings were a potential source of information, and that Shelton could have requested information from Silva and/or Silva's counsel regarding the claims that Silva presented in his habeas petitions.

Alternatively, the state argues that even if reasonable diligence did not require Shelton to monitor Silva's habeas filings, he was nevertheless required to exercise diligence to discover the Ninth Circuit's 2002 decision in Silva's case. *Silva v. Woodford*, 279 F.3d 825, 855 (9th Cir. 2002). In support, it argues that Shelton had already filed a declaration in 1994 in Silva's federal habeas case, and thus contends he was "participating"

---

[4] In that declaration, Shelton attested that Norman Thomas lied at trial regarding statements Thomas attributed to Shelton. *See* Petr's Exh. O. Shelton notes in his declaration that Thomas testified that he told him "that [] Silva and I had both shot Kevin Thorpe. . . , causing his death." *Id.* Shelton subsequently denies making such a statement and asserts that if Silva's trial counsel had called him as a witness in conjunction with pretrial motions in Silva's case, he would have so testified. *Id.*

7

in those proceedings and would have had a reason to monitor the proceedings and their outcome. The state asserts that the Ninth Circuit's 2002 opinion in Silva's case discussed the precise details of Silva's *Brady* claim.

The state further argues that it was unreasonable for Shelton to have failed to discover the factual predicate for the *Brady* claim until the Ninth Circuit's decision in 2005. It asserts that Silva's case was not simply some random proceeding, but that Silva's habeas proceedings presented challenges to the very same evidence presented at Shelton's own trial.

In opposition, Shelton first addresses the state's arguments regarding his due diligence by arguing that in the event the court were inclined to dismiss the petition, an evidentiary hearing is required. He contends the issue of his diligence amounts to a credibility contest, and that he has submitted facts that, if true, entitle him to pursue his *Brady* claim.

Shelton frames the diligence issue as whether, in spite of the state's continuing concealment and nondisclosure of the secret deal with Thomas, he should nevertheless have discovered the deal prior to learning about it following the Ninth Circuit's 2005 decision in Silva's case. Throughout his opposition, Shelton emphasizes that the state has been complicit in concealing evidence of the prosecution's secret deal for years. He notes that he presumably never would have learned of the secret deal providing the factual predicate for his *Brady* claim had he not discovered it on his own via the Ninth Circuit's 2005 decision in *Silva.* He argues that the state should not be permitted to benefit from the longstanding concealment on grounds that Shelton should have discovered the secret deal sooner than he in fact did.

Shelton contends that he cannot be blamed for not knowing about the suppressed impeachment evidence or for failing to search for it prior to the point at which he discovered it in 2005. He asserts that his circumstances were different from those of his codefendant,

8

Silva, because unlike Silva who benefitted from continuous representation, until this court appointed him federal habeas counsel in 2011, Shelton had not been represented by counsel since the resolution of his direct appeal in 1984. Shelton notes that unlike Silva, he was not sentenced to death for his role in the crimes, and therefore did not receive assistance from appointed capital habeas counsel for the past twenty-five to thirty years.

Shelton also notes that even though his trial involved substantially the same evidence as Silva's, their prosecutions and appeals have proceeded separately from the start. He notes that his trial was severed from Silva's, and that he proceeded to trial first in Mendocino County. Silva was subsequently tried in San Bernardino County following a change of venue. Shelton asserts that their appeals also followed "entirely separate paths and never intersected." Because Silva's was a capital case, his appeal was subject to special rules, and he received the assistance of appointed counsel throughout his appeal and postconviction proceedings, both in state and federal court. Shelton thus argues that he cannot be held to the same standards of effort, expertise, and resources as Silva in terms of discovering the factual predicate for the *Brady* claim because he was an incarcerated pro se prisoner.

Shelton further counters that the fact that he submitted a declaration in 1994 in support of Silva's federal habeas petition sheds no light on his knowledge of or his diligence in discovering the secret deal. He notes that his declaration supported Silva's claim for ineffective assistance of counsel and did not pertain to the deal underlying the *Brady* claim.

As for the filings in Silva's state and federal habeas cases, Shelton contends that he should not be required to have endeavored to gain access to such filings, especially since he was not on notice about the secret prosecution deal. He argues that by their very nature, *Brady* claims are difficult to discover, and emphasizes that neither he nor his trial counsel had any reason to suspect that the prosecution had struck a secret deal.

In reply, the state reiterates the arguments it made in its opening motion. It

9

additionally suggests that whether Shelton "could have" discovered the factual predicate for the claim does not involve credibility, and asserts that an evidentiary hearing is therefore unnecessary. The state also argues that there is no basis for excusing Shelton from the diligence requirement simply because he raises a *Brady* claim.

Finally, the state acknowledges that the prosecution failed to but should have previously disclosed the secret deal to Shelton. However, it notes that to the extent Shelton intends to suggest otherwise, there is no "continuing [*Brady*] violation" because once Shelton filed his current petition, it was obvious that he was aware of the factual predicate for the claim.

### B. Analysis

#### i. Legal Standards

Section 2244(d)(1) provides in pertinent part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under § 2244(d)(1)(D), AEDPA's statute of limitations begins to run when the petitioner knows or through diligence could discover the important facts, not when the petitioner recognizes their legal significance. *Hasan v. Galaza*, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001). Petitioner need only demonstrate when a reasonable investigation would

10

have uncovered the "newly discovered" facts. *See United States v. Battles*, 362 F.3d 1195, 1198 (9th Cir. 2004) (holding in § 2255 case that even though petitioner did not have access to trial transcripts, the facts supporting claims which occurred at the time of his conviction could have been discovered if he "at least consult[ed] his own memory of the trial proceedings").

### ii. Diligence

At the outset, the court notes that although the state has argued that Shelton could have discovered the factual predicate for the *Brady* claim based on Silva's 1989 habeas petition before the California Supreme Court and his 1990 habeas petition before the United States District Court for the Central District of California, it has unfortunately failed to provide this court with copies of those petitions. This is in spite of the adequate time that it has had, including an extension of time to file the reply, and the fact that the documents are not otherwise available to this court.

As noted above, the state asserts that both of those petitions contained the factual predicate for Shelton's *Brady* claim, and Shelton does not dispute that is the case. Nor does this court have any reason to believe that the state's representations to that effect are inaccurate. However, even if this court were to assume that the petitions in fact contained the factual predicate to Shelton's instant *Brady* claim, the court finds that the exercise of due diligence did not require Shelton, who was incarcerated and unrepresented at the time, to monitor and/or obtain Silva's habeas petitions and related filings in those two habeas cases.

In *Quezada v. Scribner*, the Ninth Circuit addressed the timeliness of a habeas petitioner's *Brady* claim. *See* 611 F.3d at 1166. The *Quezada* petitioner sought to amend his habeas petition to include a *Brady* claim based on the prosecution's failure to disclose evidence of compensation paid to a witness. *Id.* The government argued that the claim was time-barred under 28 U.S.C. § 2244(d)(1)(D). *Id.* at 1167-68. The Ninth Circuit

11

disagreed, and held that the *Brady* claim was not time-barred, noting that the petitioner had attempted to acquire the information in prior *Brady* requests, and that those requests were rebuffed by the government. *Id.* Given the petitioner's attempts to acquire the information and the government's silence, the Ninth Circuit held that the statute of limitations did not commence until the petitioner discovered that the witness had changed his testimony regarding compensation. *Id.*

*Quezada*, however, is distinguishable from this case because the petitioner in *Quezada* requested the *Brady* information at issue, which the government denied existed, before the petitioner subsequently learned that the information in fact existed. *Id.* at 1166-67. Here, Shelton did not request information regarding the secret deal between the prosecution and Thomas. However, Shelton asserts that was because he wasn't aware of or even on notice that there was information regarding a secret deal to request from the state.

Unfortunately, other than *Quezada*, the court has not found much guidance from the Ninth Circuit regarding this specific issue in habeas cases pertaining to timeliness under § 2244(d)(1)(D) and *Brady* claims. However, as addressed in this court's March 15, 2012 order, the Ninth Circuit has recognized the uniqueness of *Brady* claims in the context of the restrictions applied to second and successive habeas petitions under § 2244(b)(2)(B), which compels a showing similar to that required by § 2244(d)(1)(D)'s timeliness provisions.[5] In *United States v. Lopez*, the Ninth Circuit noted that:

---

[5]Section 2244(b)(2)(B) provides in pertinent part:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
>    (B)   (i) *the factual predicate for the claim could not have been discovered previously through the exercise of due diligence*; and
>
>          (ii) the facts underlying the claim, if proven and viewed in

12

> Given the nature of *Brady* claims, petitioners often may not be at fault for failing to raise the claim in their first habeas petition. It is the prosecutor who violates *Brady*'s disclosure obligations by not providing favorable evidence to the defense, and that prosecutorial error may not surface until petitioner's first habeas petition has already been resolved.

577 F.3d 1053, 1064 (9th Cir. 2009); *see also King v. Trujillo*, 638 F.3d 726, 729-30 (9th Cir. 2011).[6]

Additionally, even though it involved the timeliness of an ineffective assistance of counsel claim as opposed to a *Brady* claim, the Ninth Circuit's decision in *Hasan v. Galaza*, is somewhat helpful. 254 F.3d at 1153-1154. In *Hasan*, the Ninth Circuit considered when and whether petitioner knew or should have known of the factual predicate underlying his ineffective assistance of counsel claim. 254 F.3d 1150 (9th Cir. 2001). The *Hasan* petitioner filed a federal habeas petition, claiming that his counsel had been ineffective for failing to investigate, or to demand inquiry into, possible juror misconduct. *Id.* at 1152. Because the petition was filed after AEDPA's statute of limitations expired, the state moved to dismiss the petition as untimely under 28 U.S.C. § 2244(d)(1). In response, the *Hasan* petitioner contended that the limitations period did not begin to run until he actually learned of the facts that would have been revealed by an investigation into the juror misconduct - that a prosecution witness in another case, who had reportedly slipped a surreptitious note to a juror in the *Hasan* petitioner's case, was at the time romantically involved with a prosecution witness testifying against the *Hasan* petitioner. *Id.*

The district court denied the petition as untimely, concluding that the petitioner's

---

> light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(Emphasis added.)

[6] *Lopez* was a § 2255 case, and the court was applying § 2255(h)'s gateway in that case. The Ninth Circuit, however, treats the § 2244 (b) gateway identically. *See United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000).

13

ineffective assistance of counsel claim, based on the apparent jury tampering issue, was untimely. *Id.* at 1154. It reasoned that at the time petitioner moved for a new trial, he was aware of certain facts indicating jury tampering, even if he didn't become aware until much later of the specific facts underlying his claim. *Id.*

The Ninth Circuit reversed and remanded for a determination of the specific date on which petitioner could have discovered the romantic relationship between the juror and the prosecution witness. *Id.* at 1154-55. The court recognized that petitioner knew at the time his new trial motion was denied that there may have been jury tampering his counsel had not fully investigated. *Id.* But, the court nevertheless reasoned that the petitioner did not know at that time the factual basis for establishing the second prong of his *Strickland* claim — prejudice based on the theory that, had counsel investigated, he would have discovered the romantic relationship and could have contested the prosecution's representations and possibly obtained a new trial. *Id.* Until the petitioner discovered the fact of the romantic relationship between the apparent jury tamperer and a prosecution witness, the court held, the petitioner did not have a "good faith basis" for arguing prejudice. *Id.*

Unlike the *Hasan* petitioner, Shelton was not even aware that generally, he *may* have possessed a *Brady* claim, let alone that he possessed a *Brady* claim based on the specific secret deal. Until there was reason for Shelton to suspect that he possessed a *Brady* claim, he did not have a reason to investigate such a claim, let alone raise it in prior habeas proceedings.

Given the very nature of the concealed evidence at issue here, the court finds that there was nothing to put Shelton on notice that he should be monitoring Silva's cases for the purpose of investigating the possibility of such a *Brady* claim. The fact that Shelton filed a declaration in 1994 in support of Silva's federal habeas petition on an unrelated ineffective assistance of counsel claim did not put him on notice of the *Brady* claim raised by Silva or of the underlying secret deal. The state's argument - that Shelton should have

14

been following Silva's habeas cases - presupposes that Shelton had some form of notice that he possessed a potential *Brady* claim and that Shelton was aware that Silva was himself pursuing such a claim. Absent some sort of notice or awareness of the possibility of such a claim on Shelton's part, the court cannot conclude that Shelton's failure to monitor Silva's state and federal habeas proceedings constituted a lack of due diligence.

By contrast, had the state notified Shelton of the existence of the secret deal after Silva's counsel learned of it in 1986, and had Shelton subsequently failed to pursue further investigation into his claim, such a failure would likely constitute a lack of due diligence such that Shelton's *Brady* claim would now be time-barred. The state concedes that this, however, was not the case. The state chose not to inform or notify Shelton of the secret deal once it came to light more than twenty years ago, and Shelton, who was incarcerated and unrepresented by counsel, understandably did not undertake to investigate a claim of which he lacked notice. Given his lack of notice of a potential *Brady* claim, the court cannot conclude that Shelton failed to exercise due diligence when he failed to undertake efforts to discover the factual predicate for the claim via filings in Silva's cases. *See Willis v. Jones*, 2009 WL 1391429 (6th Cir. 2009) (holding that habeas petitioner had shown due diligence for AEDPA's timeliness purposes where state failed to disclose *Brady* evidence and the petitioner "had no reason to know that the state had not disclosed *Brady* evidence").

The Ninth Circuit's published 2002 decision in Silva's case presents a closer call for the court. *See* 279 F.3d at 825. In that decision, in which the Ninth Circuit remanded Silva's case to the district court for a determination as to whether the state had suppressed *Brady* evidence favorable to him and whether the evidence was material, the court referenced the secret deal which forms the basis for Shelton's *Brady* claim. The court noted that:

> Silva argues that the district court abused its discretion in denying an evidentiary hearing on his claim that the prosecution improperly failed to disclose an important component of a deal they struck with Thomas, to the effect that he would not be psychiatrically examined until after he testified in

15

Silva's trial. In support of this claim, Silva offers a declaration from Thomas's attorney stating that he believed his brain-damaged client was either incompetent to stand trial or insane, and that he had immediate plans to have Thomas psychiatrically examined before striking the deal with the prosecution. This aspect of the alleged agreement was never divulged to Buckwalter or the trial judge, nor was it revealed by Thomas in his testimony before the jury.

*Id.* at 853.

The question for this court is therefore whether the exercise of reasonable diligence required Shelton to discover the factual predicate for his *Brady* claim via the Ninth Circuit's 2002 decision in his codefendant's federal habeas case.

Section 2244(d)(1)(D)'s due diligence requirement is an objective standard that considers the petitioner's specific situation. *See Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) (noting that "a due diligence inquiry should take into account that prisoners are limited by their physical confinement"); *accord Wilson v. Beard*, 426 F.3d 653, 661 (3rd Cir. 2005) (holding that the defendant had not failed to act with due diligence to learn of the factual predicate for his claim when the defendant did not personally learn of the prosecutor's allegedly unlawful actions until his attorney notified him in prison, and that the fact that the news media broadcast a report on the prosecutor's unlawful tactics several days earlier was irrelevant); *see also Wood v. Spencer*, 487 F.3d 1, 5 (1st Cir. 2007) (noting that "test of due diligence under section 2244(d)(1)(D) is objective, not subjective"); *Carter v. Scribner*, 2009 WL 4163542 (E.D.Cal. 2009) (applying same standards).

The resolution of the question of whether a duly diligent petitioner would have discovered the information "depends, among other things, . . . on the conditions of [the petitioner's] confinement." *Wims v. United States*, 225 F.3d 186, 190 n. 4 (2d Cir. 2000) (observing that "[t]he mere fact that . . . it was possible for [the petitioner] to ascertain the [factual predicate of his claim]" earlier than he did "is not dispositive" because AEDPA "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence"); *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (the evaluation of due

16

diligence "may not ignore[ ] the reality of the prison system").

Here, again, there is no dispute that Shelton was in prison and unrepresented at the time the Ninth Circuit issued its 2002 decision in *Silva.* As of 2002, the state still had not notified Shelton of the secret deal. Given Shelton's lack of notice or awareness of a potential *Brady* claim, for the same reasons discussed above regarding the filings in Silva's state and federal habeas cases, Shelton was not on notice that he should monitor the Ninth Circuit's decisions in Silva's case. Accordingly, Shelton's failure to discover the Ninth Circuit's 2002 decision did not constitute a failure to act with due diligence under § 2244(d)(1)(D).[7]

For the reasons set forth above, the court finds that Shelton's current petition is timely, and DENIES the state's motion for reconsideration.

## CONCLUSION

Respondent's motion for reconsideration of the court's March 15, 2012 order denying its motion to dismiss the petition is DENIED. Respondent shall file with the court and serve on petitioner, within 60 days of the date of this order, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be issued. Respondent shall file with the answer and serve on petitioner a copy of all portions of the administrative record that are relevant to a determination of the issues presented by the petition.

////

////

---

[7] The court recognizes that the state relies in part on the Tenth Circuit's decision in *Easterwood,* 213 F.3d at 1323*,* for the proposition that Shelton should have discovered the Ninth Circuit's 2002 *Silva* decision in 2002. *See* Motion at 9. However, *Easterwood* actually stands for the proposition that a case is discoverable by due diligence on the date the opinion became accessible in the prison law library, not the date the opinion was issued. *Id.* Moreover, the court does not find *Easterwood* particularly helpful or on point since it did not involve a *Brady* claim such as that here, and instead involved a claim regarding the petitioner's competence - one of which, unlike Shelton, he had notice prior to his discovery of the court's decision at issue in the *Easterwood* case. *See id.*

17

If the petitioner wishes to respond to the answer, he shall do so by filing a traverse with the court and serving it on respondent within 30 days of his receipt of the answer.

**IT IS SO ORDERED.**

Dated: June 14, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge